Case number 22-1272 et al. Hospital de la Concepcion petitioner versus National Labour Relations Board. Mr. Fortney for the petitioner, Mr. Francisco Fitzmaurice for the respondent. Mr. Fortney, good morning. Good morning. May I please the court? David Fortney on behalf of the petitioner versus respondent, Hospital de la Concepcion. This is a labour case and it requires this court to determine whether the changes in work shifts and assignments for certain hospital employees was covered by an extensive, very detailed management rights clause in the party's collective bargaining agreement and that that clause which actually expressly authorized the changes that occur under the contract coverage test this court established in the U.S. Postal Service case actually 30 years ago almost to the day. The hospital's conduct we submit was fully authorized by the literal language of the collective bargaining agreement and therefore we of course would ask that the board's decision and order be vacated. Let me just take a moment and go back to what the underlying facts were because facts matter in addition to the contract laws. These changes occurred during the onset of the global COVID pandemic following the issuance of repeated executive orders by the governor of Puerto Rico to essential services including COVID responses and it was only following the issuance of the third executive order by the governor that the hospital undertook the necessary reduction in hours certain bargaining unit employees who are not required to perform the limited authorized operations and managerial employees that is non-bargaining unit employees also were subject to similar revisions and restrictions in their work hours. I noted the disposition of the case not only we believe it controlled by this court's ruling in U.S. Postal Service but the National Labor Relations Board which after some time did adopt this court's rule in MV Transportation that was in 2019 and specifically embraces this court's test noting that the contract coverage language really requires us to look at whether the conduct is within the compass or scope the agreement. The board did not rely on or did not embrace your contract coverage argument and I think that's because there's a well-established difference between changing shifts and changing work hours so if you could address the argument that the board did accept which was about unilateral reduction that would be helpful. I'd be happy to. So the board principally as I understand the argument because it did change kind of evolved as it's gone along but currently in the brief the board argues that there was a practice relating to 40 hours prior to that the board had argued that the contract laws required 40 hours but in any event the record demonstrates that the 40-hour work week was in fact but not practice and not required by the contract specifically the union's witness testified that he worked less than 40 hours. My understanding is that the ALJ made a finding that the practice was 40 hours and adverted to the contract clause as a kind of baseline piece of evidence on that and indeed the the evidence in the record that the ALJ accepted was what the board embraced there was a practice of 40-hour a week scheduling and I know you have a witness who said that on two or three occasions he was allowed to go home early but I take it that the ALJ and the board did not accept that as showing that there was no such practice. Also the part-time employees that regularly work did not work 40 hours a week was part of the record. Additionally the contract language does not support and and respectfully there is no deference owed to the board or the ALJ on interpreting collective bargaining agreement under Lytton that is what this court must do and if you read the collective bargaining agreement these parties very sophisticated detailed collective bargaining agreement the parties knew how to mandate certain conduct certain actions in contrast to the provision for a quote regular work week right and they're not arguing that that that it's mandated they're arguing that it was a practice and then that that the employer made a unilateral change without bargaining and tied to the concept in the contract of a regular work week obviously in responding to the governor's this was certainly not regular work was not this was not a regular schedule and and I think that the additional points with respect to the contract that need to be considered include that the there were mandates in the contract very specific of two-day rest period will be provided meal breaks will be provided there's a little bit but that's an argument saying that that the 40 hours wasn't a requirement but as I take it the board is not arguing that it was the requirement and that the employer violated they're taking it as a baseline and indeed I think it wasn't until your reply brief that you argued that there's no substantial evidence supporting the 40 hour per week past practice and indeed the letters you sent to the employees suggest that you thought that there was a past practice and that the that the seeking to change that in light of covid so given our rules about preservation of arguments has the challenge to whether the finding that there was a past practice of 40 hours been adequately preserved if the first time that you raise that challenge is in your reply brief before us well respectfully in terms of the board's argument that was raised in their brief here and it would just put that the the the tension between arguing in practice which conflicts with an express provision in the collective bargaining agreement practice cannot amend the collective bargaining what does it conflict with it conflicts with the specific provisions going back to the management rights clause nothing limits without any limitation whatsoever there's a normal very there's a litany of actions that can be undertaken unilaterally that has been agreed to by the union so notwithstanding if there was a past practice and that includes scheduled modifications that includes up to and including suspension that didn't hurry but that's all right but that would be a disciplinary typically it would be a disciplinary action so well if you're if you're a where's changing your work hour says they're very different things no well i'm sure i mean you you appreciate that i appreciate that but respectfully i'm not sure i agree that changing a shift doesn't affect your paycheck because different shifts get paid at different rates they may work different hours i mean there's a host of things that are embodied changing a ship um also there's another specific provision again if you look at the letter you raise the letter to the employees it tracked closely the language in the management rights clause noting among other things safety measures expressly authorized in the management rights clause the ability both for the employees and their families and members of the community to maintain spacing and safety but you wrote this uniform letter to you know almost 400 employees at once right it was the same letter to everybody there was a general letter and then the implementation was told them there was going to be a reduction in hours yes uniformly everybody got that same letter that's how are you going to be reduced so when you when you send a letter that says to everyone hours are going to be reduced doesn't it assume that there's a baseline that employees were already expecting and that's what was changing well employees were working various shifts some were working part-time i say if i say your pay is being reduced i'm assuming you know what your pay already is that we both know what your pay is and when you say your hours are being reduced there's a common understanding of what the hours are now and that's what's going to change correct correct and that common understanding of what those hours were is what the alj said was 40 hours part-time employees are different but for those who are full-time they got this letter there was a baseline understanding the alj found as a matter of fact to be 40 hours and the employer itself seems to have assumed that there was a baseline understanding maybe you think it was 42 or 39 hours but that it was there was a baseline understanding of a settled amount of hours that people work and that's why it's changed otherwise if hours are changing all the time and no one has any um settled expectation about hours you don't need to send a letter saying things are changing because people would know they're always changing so the letter sort of itself evidence that there was a baseline that's now going to be departed from so respectfully we we do not agree that there was a practice so and i appreciate the argument here the contract whether it had been previously exercised or not didn't provide the hospital with this authority to engage unilaterally that's what the union had agreed to and the contract did not include guarantee of 40 hours again this isn't a case about what the contract required this is a case about what the because there's there's two ways to create obligations one is one is through the contact another is through custom and practice and the alj and the board said honestly this is a custom and practice case so put aside the language of the contract you had a custom and practice this is what was found a custom and practice of having people work 40 hours and it seems that you felt obliged to send a letter to everybody a uniform letter saying your existing hours are going to go down suggest that everybody had a baseline i think you agreed you have to have a baseline if you sell people to reduce there's a baseline and what the alj found as a matter of fact was what that baseline was you may disagree with that fact find you understand that but there was a there was a communication here that recognized some existing baseline there was a baseline to the extent the hospital had not been operating pre-covid just as all institutions have been operating what was that baseline in the letter and the part-time some people working under 40 hours people working over i mean it varied it depended on where they were there was a variety of send a letter if everybody's hours varied all the time then you were just going to vary them some more exactly but you know why do you need to send a letter if everybody had any stable assumption about their hours why did you need a letter hey you have to communicate what the changes are so people know when to work or when not just as any organization does so that's certainly if you have unstable hours people would already have a system of checking each week or so to figure out what their shifts are going to be so but the hospital shifts were changing dramatically per the governor's orders right this was not a regular this was not a regular work week that is correct sorry i thought the hospitals were exempt from the governor's there were yeah thanks there were very specific requirements in terms of essential services addressing hospital obligations that modified hospital operations so essentially they were down to covid related operations and other you know necessary treatment which was reflected certain components of the hospital their hours weren't changed in order to respond to this the environmental unit the intensive care unit respiratory the laboratory work other sections of the hospital were reduced some by one day a week some by two days and it depended and similarly management employees were affected in a similar fashion depending on where they were there and your argument just to make sure that i've given you a chance on on the preservation of the point was that in your view the board's position didn't crystallize until its primary brief and that's why you didn't challenge the whether there was substantial evidence to support the past practice of 40 hours until your reply brief correct with respect to the practice because candidly we had understood the advancement which the board i think has now abandoned to be trying to interpret the 40-hour provision as a contractual mandate which it obviously is not and i think i think the parties are aligned on think i mean the board's decision one lengthy footnote which i'm sure everyone has read several times uh is somewhat confusing i think that's that's how we understood it and alj made findings on both both a contract claim and a unilateral change claim the aoj made a number of findings including um which again the board has abandoned the alj made findings with respect to covet board as being an exigent circumstances it appears that the board has backed away from that and said no it's really more of an economic consideration so i respectfully i find some of the rulings to be the board's rulings didn't just stop the alj they substantively modified i believe some of the findings actual findings as well as certainly the reasoning that was deployed um you don't dispute that the board's allowed to do that pardon me you don't dispute that the board is allowed to do that the board in its review of the alj decision well i would dispute if they modify factual findings respectfully yes that is highly unusual typically the board lacks the power to make its own well it doesn't have the benefit obviously of witnesses and credibility about their power are you challenging i didn't understand you'd be i'm not i'm not i'm not challenging i'm just noting that got it but thank you for that okay mr courtney you've gone over your time but yes i just want to make clear under this exigent circumstances argument the time the so-called delay between when you were and just closed down uh for the covid patients what was the uh period of time between that third order and so the governor you sent the notice on april 14th right to the employees right so the governor had issued uh there were i'll call them rolling executive orders the first one was for two weeks let's go back we all know there was great uncertainty as to what this situation was that was an order of two weeks duration then the order second executive order was issued at the at the conclusion for another two weeks then a third executive order was issued it was much more open-ended which basically said look three weeks or until this situation is addressed that's a paraphrase what was the date of that one that is i have 330 but let's see that is three third i'm sorry 412 is the executive order number three and the first general letter the judgment you raised went out on two days later on april 14th and then there was follow-up with the necessarily impacted both bargaining unit and non-bargaining unit so is it fair to say that the third order told you cut out the elective surgery do whatever you can do shut down basically except for covid and two days later you sent the letter yes to the employees yes okay the other question i had was about these interim earnings um the board says in footnote five distinguishing this case uh from applying the ogle protection formula because interim earnings uh are not involved in this case that's wrong isn't it i i think it is wrong i mean ogle again the alj these are all interestingly you know everyone citing this case was in puerto rico at the time the case by the way was heard via zoom call people still weren't in person a year later when this was adjudicated ogle was not ordered except by the board yes the board has authority but the predicate requirements to impose the ogle factors which is a detailed factual hearing which this court has said uh in a deming hospital corp is what should be followed has not occurred and fw woolworth remember these were folks that were just for one or two days for a period of several several weeks several months were impacted by this so it does feel ogle has a candidly a bit of a punitive component to it and under the circumstances of compliance with a governor's executive order seems wholly inappropriate not to mention that the requisite findings are lacking we'll give you a couple minutes and reply uh thank you mr francisco it's morris uh good morning may it please the court i'm brady francisco fitzmorris for the national labor relations board can i just ask you at the beginning just to get it in do you agree this was a two-day delay between the final order that said shut it down except with respect to covid patients and they sent a letter out two days later excuse me right uh the dates i believe that were discussed are correct there was an initial government an initial order from the governor of puerto rico in mid-march that lasted two weeks the second one two weeks later that lasted two weeks and then a third as discussed uh by brother council um so that is correct that goes to the the issue of exigency and the board's finding here was that um they analyzed the hospital's claim which was they expected to suffer operating losses if they continued to schedule 40-hour weeks for other employees as had been done uh and the board took that at face value and said under controlling board law uh expected or even actual operating losses would be insufficient to establish exigency well how is that different from the case and i don't recall the name with the hurricane where that was an exigent circumstance uh well i believe in the hurricane case there was an evacuation order in place where it would take is that what it would take in the in your opinion in the board's opinion do you think i uh that's not what we have here there was no evacuation order the hospital was allowed to continue its operations and should be noted this was a pandemic of course the hospital should have it could have continued its operations and also to note that the board didn't find that the hospital could not reduce hours what the board found was there's a bargaining obligation and if the hospital felt found that it needed to reduce hours it could do so within the confines of the act which requires modifying the employee's collective bargaining representative and providing an opportunity to bargain over that decision the facts here show that the hospital rather didn't notify the union at all directly informed its employees and did not bargain over that so i'll just note that the the issue as as noted by the court is whether there was a regular and long-standing practice scheduling employees 40 hours a week such that it constituted status quo uh i won't dwell on this because it's it's already been noted by the court but this issue was not raised um in the opening brief the hospital uh and should be deemed waived and it's also hard to wrap your brain around given that the hospital admits it implemented a change that raises the question change from what obviously there was an understanding in place that employees were to regularly work 40 hours per week um this wasn't only crystallized in the board's opening brief before this court as has been mentioned this was integral to the litigation throughout i'll draw the court's attention to the complaint the administrative complaint before the administrative law judge which alleged that the hospital quote reduced the regular working hours 40 hours per week to fewer hours per week without a notice and an opportunity to bargain after that complaint the hospital filed an answer in which they argued they had provided adequate notice and opportunity to bargain you can find those quotes at pages 15 29 and 43 of the joint appendix so there was really no question about what the theory of this case was from day one and in the board's decision in order what the board found was a violation of section 885 because of a failure to provide notice and opportunity to if the board reaches the question of substantial evidence there was plenty in the record here uh there was the testimony of two different witnesses uh one worked in x-ray one was a nurse both testified that they worked 40 hours per week for their entire careers uh the x-ray like this episode it seems like incredibly thin evidence that you're talking about 400 some employees you have two people say we we work 48 hours a week they have one person who says i didn't mine went up and down and then you had records from april 22 weeks of records from april 2020 you're trying to show a long-standing custom and you the only pay records are the only hour records you have are from the end you don't show any beginning how can that be substantial evidence uh so i'll i'll note a few things um you know the question here is whether practice was regular and long regular and long-standing so should it creates an expectation of the employers correct um and first to take the testimony of the two witnesses it's it is true this these were two witnesses that gave testimony um the x-ray technician uh rodriguez vincennes worked for 33 years so her testimony you know is i think is worthy of substantial weight one person out of 400 and she's and you've got four different contracts here she's only one of the contracts uh she's one and then nurse ruiz bonet worked for five years as well five years so i understand that these are two out of witness for 30 something years they have a witness that that wasn't stable that one person said well for five years i've been stable so nobody speaks to the other um groups that are covered by their own separate contracts how is that and then your only work records from april 2020 how is that sufficient to show a long-standing custom and practice um well i think the long-standing issue you know goes to the the work schedules that your honor mentions from uh april 2020 before the change was implemented show that uh regular 40-hour work speak work weeks five days a week eight hours each held by two days off as bargained for by the parties in the contract was the norm and that uh those records at general council exhibit 10 shows us what the norm was in april 2020 uh it it does that's correct but throughout each of the four bargaining units um you know in all all aspects of the hospital's operation i'm just curious why i would have expected if i were established a long-standing customer practice that i would have gone back in time for some records or witnesses and i've had more witnesses is this commonly sort of all the board has or was it particularly been here uh well i think the court also needs to take into account that the language of the collective bargaining agreement uh was relied upon by the board as well as evidence of that practice being in place but this is the kind of trying to have their cake and eat it too saying this is not a contract case but we're only going to have this tiny amount of evidence and then point to the contract and say it's not a contract case it's a custom case but we don't really have we have very very very thin evidence on custom i think if i were to add one more thing to the court consideration is the fact that the hospital is never really seriously contested the burden of proof to establish the custom well the board bears the burden of proof okay so the fact that they didn't say anything doesn't really matter doesn't substantial evidence is the board's burden for sure i agree with your honor right um but you know in this case we have uncontroverted uh testimony we have documentary evidence it was an uncontroverted testimony they had their own witness who said no i'm i get sent home when there's not enough work uh i respectfully i would disagree with the characterization i don't think that that's uh controverting the testimony testimony of that witness was that i think two or three times per year had been sent home early this goes to uh really the the crux of the between a contract violation of ordered minimum hours versus what the practice was of scheduling 40 hours per week now there's no claim here that employees are entitled to 40 times their hourly rate every week regardless of what hours they work there's no claim here that they're entitled to actually work 40 hours every single week there's uh no work on a given day occasionally the practice was that employees had been sent home what the practice was was putting workers on the schedule for 40 hours per week and they're not uh that finding is uncontroverted how does how does this work if you get to the compliance stage at that point do they get to put on evidence that says actually 40 percent of our employees only work 35 hours a week and they introduce because they'll have to come forward then or does this order require under ogle that they get their back pay their compensation is for 40 hours a week certainly at the compliance stage you know the board would have to look at evidence of uh what employees were actually earning over time especially given that it acts uncontroverted that some employees worked part-time hours so that's part of talking about the not part-time workers but the ones who were not designated part-time but were not in fact always working 40 hours certainly so what the board's order requires is that the hospital rescind its change to scheduled hours and make employees hold for that change certainly in my mind making employees all for the change to scheduled hours would not necessarily mean making sure they've been paid for precisely 40 hours for every week after the change but the burden of proof is going to be on the hospital at the compliance um or is it on the board or general counsel that's a good question your honor right i don't want to speak out of turn and i'm not certain and then with you you just mentioned that they're the part of the relief that you want to enforce is in order to rescind the change in the terms and conditions of employment the hour changes that were unilaterally implemented um and to and to bargain over them but the hospital said in its answer to the general council's complaint these things these hours of changes have already been rescinded so as to that aspect of the board's order isn't it there's nothing to rescind bargaining to be done um respectfully i would disagree um the board's order includes includes a cease and desist order uh which are they going to cease and desist they've already rescinded it did you there any evidence that had any ongoing violation um not in the record your honor but the the order would be the order would impose an ongoing obligation to uh to refrain from similar or uh related unfair labor that's just what the law requires i mean it's an ongoing obligation to comply with the law uh it's an ongoing obligation imposed by an order that's now enforced by this court to abide by the law which in other instances would be administered by the nlrb which as you know cannot enforce its own order but there's nothing there's no record that they had have any practice of ongoing violations in fact this is and you know they've been in business all these years it's not like this is becoming about someone who's got a repeat player of engaging in unfair labor practices this is what covered happened um they had a response lord says we're allowed to respond that way they say look we've rescinded it all everyone's hours are back there is nothing for us to bargain over over a past event that's been undone you have your you know relief on making people whole but i'm not sure what record there is to say they need to be under some sort of ongoing court supervision for compliance going forward without any showing that there's any risk whatsoever that they're going to they never had a pattern of not negotiating i i hear your point your honor uh i think the first response i would have is that this is an argument not raised by the hospital and hasn't been briefed i know that there there is circuit court case law on this having not briefed you're the ones who are asking for enforcement of the order you have a cross appeal here and so you didn't brief why we should enforce that aspect of the order uh you have an affirmative showing to make us across appellate certainly and and i i'll rest on my statement that there's an ongoing obligation imposed by the board's order and if your honor would like supplementary case law on that i can certainly follow up after the argument um i see that i'm past time i i would like the opportunity to address ogle very briefly since it was raised by very briefly okay uh just to note that this was an issue that uh fogel was imposed by the administrative law judge in the first instance um and so it was that issue in the administrative litigation it was not opposed by the hospital and its exceptions to the board or in its answering brief for the general counsel's brief to the board uh and because that was not raised it's barred at this point by section 10e um but in in any event you know deming the this court's case fully supports application of ogle when there's been no cessation of employment and and that's what happened here these employees had their hours cut they continued to work they had no duty to mitigate their losses and under the policy rationale set out in the board's community health services case uh the the board found that the policy favored not subtracting not offsetting interim earnings from back pay order and discontents that policy was as to we don't expect employees in um a non-termination or suspension status um just in a layoff status to go find other work um and so if they happen to pick up some other work um the employer doesn't get that windfall because the windfall has said i'm just laying the employers made the choice just to lay off um but here some of the money they're talking about that they want as an offset is governmental checks stimulus checks and support checks through to help people get through it what is the policy argument that um that type of payment shouldn't be offset against what the hospital has to pay certainly so as a general matter uh the board does not deduct unemployment benefits from back pay owed and calculating that remedy the reason for that is because uh governmental agencies whether state or federal that afford unemployment benefits assistance can call back those funds and is that the same true for these i'm talking about the special sort of covid stimulus checks that people were getting is that true for those uh i i don't know your honor to be frank i know that that's the general policy that's in place um i have no reason to think it would be different for the unemployment their evidence of the type of payments that they had i'm understanding was that there was but i could be wrong no the record doesn't contain evidence okay well he's actually receiving okay and and do you know whether the hospital ever got ppp funds i mean uh the record doesn't disclose that i don't know um if there are no further questions the board respectfully request mr portney why don't you take two minutes a couple of points very quickly with respect to the three witnesses judge miller i think you racist this was not a hospital witness this was a witness it was actually the union representative called by the union who is effectively the agent the representative of the party to the collective bargaining agreement he is the one that testified that he wasn't regularly paid 40 hours a week didn't regularly work a 40-hour work wait wait that's a characterization he didn't say i don't regularly work 40 hours a week he said there's been two or three times right we're talking here over a period of a year so there's a question whether but what i'm yeah no i understand okay so the employer did not call witnesses to establish that it was less than a 40 hour and it was it was the agent of the union the agreement that did see that there wasn't a uniform 40-hour work that's the only thing i don't think that's disputed um you said there was the april 12th order and then you issued your letter shortly to employees shortly thereafter april 14th april 12 order and then the april 14th there was the march 30th order it's the one that put the ban on elective procedures so what changed between the march 30th and april 12th executive orders that suddenly created the exigency that didn't exist just with the march 30th order the duration at that point recall there was we all including the hospital had a learning curve on what covet meant the first two executive orders were limited in duration to two weeks they were finite two weeks they expire so at that point everyone reading thinking maybe this will end in two weeks obviously that seems almost silly in retrospect now but when the third executive order issued it said three weeks or as long as may be required it had an open-ended component and frankly the experience level was much different it was clear this wasn't going to when i say this covet wasn't going to end that quickly but at the same time since there was uncertainty and there was not certainty on your part that you did not have time to notify the union and bargain you're now in a period of uncertainty on timing and it was your burden to show that not only had an exigency happen but in fact it was it was so imperiling that you did not have time to notify and or bargain with the union what evidence did you put in as to that respectfully the position of the hospital is it had already bargained with the union resulting in the management rights clause okay it authorized pardon me right i get i understand that yes you lose that argument you lost that before the board so in a world where they you don't have that argument is there anything in the record that explain that asserts or explains why you didn't have time after the april 12th um or march 30th executive orders to notify the union and bargain with them even who was expedited timing was not the trigger it was based on the authorized actions in the contract that was the position of the hospital got it um one or two points quickly um with respect to compelling economic considerations i just want to point out that the rule is any unforeseen occurrence having a major economic effect requiring the company to take immediate action that's the board standard angelica healthcare it's i i just asked you but you said you had no evidence on need for immediate action okay maybe we're hung up on the term immediate because we did act reasonably promptly after the immediate action order that cannot first be done through notice and bargaining with the union that's what you what you have to claim here is that i had to go so that we had to go so fast we couldn't first notify and do expedited bargaining with the union we couldn't that's what you have to show and that's that's the part that i'm missing here okay i understand your contract we have a contract argument but we put that aside that we don't have anything right and then the second argument would be under exigent circumstances we haven't discussed we clearly the covid crisis informed by the executive order and the experience at that point justified what occurred um with respect i just want to say one word on the on the damages point because the and i would represent to the court these parties have just recently entered into a new collective bargaining i mean the mootness of this whole situation thank heavens covid and all of this is in the rearview mirror so providing information bargaining over a decision it is moot judge millet is is i agree with that i didn't say providing information was moot and i didn't say make no i didn't mean to what you said but i'm in terms of all i'm talking over the decision and so forth that everyone is back to work parties these are they haven't been made whole financially uh for the one to two days that they lost during that several week period that is correct that is correct and that would certainly require a much more detailed much more detailed finding than this record would support we thank you we appreciate thank you
judges: Henderson, Millett, Pillard